SENECA LINCOLN *vs.* ANNIS A. LINCOLN, JR.

The owner of a water power and of a furnace and mills devised "the furnace and the privilege of using water to blow with." In an action by the residuary devisee of the testator against one claiming under this devise, for using the water, not only for blowing the bellows of the furnace, but also for drilling and grinding castings, it appeared that such operations were a necessary and incidental part of the business of a furnace, without which merely blowing the bellows would be useless; and that at and before the making of his will and his death, the testator let the furnace with the "privilege of using the water to blow the furnace with" to the devisee, who used the water power, not only to blow the bellows, but for the other incidental business of the furnace as then used, such as drilling and grinding a few facings which required but little power; and several furnace men testified that among furnace men "to blow," when used in reference to a furnace, meant to carry on all the operations of a furnace, and that these operations were generally carried on together and with the same power. *Held*, that the devise gave only the right to use the power to blow the bellows of the furnace; and that the above facts and evidence were not sufficient to enlarge its meaning.

TORT for wrongfully diverting the water from a mill pond and using it for the defendant's own purposes, whereby the plaintiff was prevented from using his saw mill, and his carding and shingle mill.

At the trial in this court, before *Wells*, J., it appeared that Luther Lincoln owned the plaintiff's two mills and also a furnace; that he died in 1848, leaving a will made in 1843; that the plaintiffs claimed under the residuary devise in his will; that there was a specific devise in the will to Annis A. Lincoln, Sen., of "the old furnace and the privilege of using water to blow with, from the tenth day of the tenth month to the tenth day of the sixth month, but from the tenth day of the sixth month to the tenth day of the tenth month I reserve the water for the carding

mill and shingle mill, viz. : when the water is drained down to two feet and six inches in the saw mill flume, the use of the water is reserved for the carding mill, but when there is more than two feet and six inches in the saw mill flume, the furnace may use the water and draw it down to two feet six inches with the carding and shingle mill working at the same time, if desired ; the said Annis, his heirs and assigns, to maintain and keep that part of the dam in good repair from the waste gate to the furnace, and when there is more water than the furnace takes, it may be used for the saw mill or shingle mill, but not to draw the water lower than to see the top of a large rock about eight rods above the dam ; " and that the defendant claimed under Annis A. Lincoln, Sen.

The plaintiff did not contend that the defendant had drawn down the water below two feet and six inches in the saw mill flume, but contended that he had used the water for other purposes than to blow his bellows or blast with ; such as for drilling, grinding castings, and running grindstones, emery wheels, &c., for finishing his castings ; and the defendant admitted that he used the water, either alone or in connection with steam, not only for blowing his bellows, but also for drilling and grinding castings and facings ; but it appeared that such operations are a necessary and incidental part of the business of a furnace, without which merely blowing the bellows for the blast would be useless.

It appeared that at the time the will was made and at the death of the testator, and for many years prior thereto, Annis A. Lincoln, Sen., was in occupation of the furnace property under a lease from the testator, granting him the " privilege of using the water to blow said furnace with ; " and that said Annis, at the time of the will, and during his occupation under the lease, used the water, not only to blow the bellows with, but for the other incidental business of the furnace as it was then occupied, such as drilling and grinding a few facings which required but little power.

The defendant introduced in evidence the testimony of several furnace men, " that in common and ordinary usage among furnace men the phrases ' to blow with,' ' blowing the **furnace,**

Lincoln *v.* Lincoln.

and ' blowing out,' when used with reference to a furnace, were understood to mean all the operations of the furnace, and not merely ' to blow the blast;' that if one furnace man said to another, ' We are going to blow to-day,' it would be generally understood to mean, ' We are going to carry on all the operations,' including the drilling, grinding, &c.; that if one furnace man said to another, ' We have blowed out,' it would be generally understood to mean, ' We have stopped all the works of the furnace;' and that ' blowing ' and other operations connected with a furnace were generally carried on together and with the same power."

The judge ruled, " as a matter of law, that this evidence was not sufficient to affect the construction of the will; that notwithstanding all the facts and evidence above stated, the defendant did not acquire a right under the will to use the water except to blow his bellows with; that as he admitted that he had used the water for drilling and grinding his castings, the verdict must be for the plaintiff for at least nominal damages, and for such other damages as the plaintiff proved he had sustained in loss of water at his saw mill."

The jury returned a verdict for the plaintiff for $102, and the defendant alleged exceptions.

*H. J. Fuller*, for the defendant. The phrase " to blow with," when applied as a measure of power to a furnace, is a generic phrase, and should not be limited, even in the absence of any explanation, to merely blowing the bellows. *Tourtellot* v. *Phelps*, 4 Gray, 370 ; *S. C.* 9 Gray, 102. *Pratt* v. *Lamson*, 2 Allen, 275, 282. *Biglow* v. *Battle*, 15 Mass. 313. *Cromwell* v. *Selden*, 3 Comst. 253. *Borst* v. *Empie*, 1 Seld. 33. *Rogers* v. *Bancroft*, 20 Vt. 250. The practical construction put upon the phrase by the parties during the lifetime of the testator is evidence of his intention ; and his will should be so construed. *Crocker* v. *Crocker*, 11 Pick. 252, 257. 1 Greenl. Ev. § 289. The evidence introduced as to the use of similar phrases was sufficient to show that the phrase was used in the will as meaning " to carry on all the necessary and ordinary operations of the furnace." *Attorney General* v. *Shore*, 11 Sim. 592, 616–627, 631, 632. *Gurrissen*

v. *Perrin*, 2 C. B. (N. S.) 681. *Hutchison* v. *Bowker*, 5 M. & W. 535. *Smith* v. *Wilson*, 3 B. & Ad. 728. *Brown* v. *Brown*, 8 Met. 573. *Macy* v. *Whaling Ins. Co.* 9 Met. 354, 363. *Wigglesworth* v. *Dallison*, 1 Smith Lead. Cas. 670. 1 Greenl. Ev. § 295.

*G. Marston & G. E. Williams*, for the plaintiff.

CHAPMAN, C. J. The plaintiff's title is under the will of Luther Lincoln. By that will, the testator devised to the defendant's grantor " the old furnace and the privilege of using water to blow with " for a certain portion of the year, and also during the remainder of the year subject to prior use for certain other purposes. It is added: " When there is more than two feet and six inches in the saw mill flume, the furnace may use the water and draw it down," &c., " and when there is more water than the furnace takes, it may be used for the saw mill," &c. The defendant has used the water for other purposes than to blow his bellows or blast with, such as drilling and grinding castings and facings, and contends that he had a right to do so under the devise. It appears that such operations are a necessary and incidental part of the business of a furnace, without which merely blowing the bellows for the blast would be useless. But this fact would not imply that water used for such operations could properly be said to be used " to blow with." The fair interpretation of the phrase is more limited. It does not include operations such as drilling and grinding castings in which there is no blowing, especially when there exists the operation of blowing the bellows, which it exactly describes. For the purpose of aiding in the construction of the will, the defendant introduced the evidence of several furnace men, who testified " that in common and ordinary usage among furnace men the phrases ' to blow with,' ' blowing the furnace,' and ' blowing out,' when used with reference to a furnace, were understood to mean all the operations of the furnace, and not merely ' to blow the blast; ' that if one furnace man said to another, ' We are going to blow to-day,' it would be generally understood to mean, ' We are going to carry on all the operations,' including the drilling, grinding, &c.; that if one furnace man said to another, ' We have blowed out,' it would be gener-

ally understood to mean, ' We have stopped all the works of the furnace ; ' and that ' blowing ' and other operations connected with a furnace were generally carried on together and with the same power."

The court ruled, " as a matter of law, that this evidence was not sufficient to affect the construction of the will ; that notwithstanding all the facts and evidence above stated, the defendant did not acquire a right under the will to use the water except to blow his bellows with."

The question before us is not whether this evidence was admissible, but as to its effect upon the construction of the will when admitted.

The meaning of words and the grammatical construction of the English language, so far as they are established by the rules and usages of the language, are *prima facie* matter of law and to be passed upon by the court.   But language may be ambiguous and used in different senses, and in particular trades and branches of business may be used in a new, peculiar or technical sense ; and, therefore, in a few instances, evidence may be received from those who are conversant with such branches of business, and such technical or peculiar use of language, to explain and illustrate it. *Brown* v. *Brown*, 8 Met. 573, 576.   The language of the will, in its ordinary acceptation, plainly relates to the mere blowing of the bellows, and not to the other operations mentioned, in which there is no blowing ; and a usage among furnace men, and furnace men only, to adopt a wider signification in their conversations among themselves cannot be presumed to have been adopted by other persons.   The ruling was therefore correct.

The use of the water under the lease, prior to the making of the will, gives us no aid in the construction of the will, for it is at best equivocal.                    *Exceptions overruled*